*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WILSON, Minor.

UNPUBLISHED
March 16, 2023

No. 363352
Kalamazoo Circuit Court
Family Division
LC No. 2021-000248-NA

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Petitioner is the maternal grandmother of respondent's minor child. In December 2019, when the child was approximately one year old, petitioner was appointed as the child's legal guardian. In July 2021, petitioner, in her role as the child's guardian, filed a petition to terminate the parental rights of respondent under MCL 712A.19b(3)(a)(*ii*) and (f).[1] Following a hearing on the petition, the trial court found that petitioner had not proved by clear and convincing evidence that there were statutory grounds to terminate respondent's parental rights. Additionally, the court found that petitioner had not proved by a preponderance of the evidence that termination of respondent's parental rights was in the child's best interests. Consequently, the court entered an order denying petitioner's request to terminate respondent's parental rights. Petitioner now appeals as of right. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The child has been in petitioner's care since she was an infant. When she was approximately one year old, petitioner filed a petition seeking to be appointed her guardian. Respondent, who was in prison at the time and whose paternity had been established by genetic testing, attended the guardianship proceedings remotely. He requested that his sister be appointed guardian, but the court appointed petitioner. Thereafter, the child continued to be cared for by petitioner. In 2021, petitioner sent a message to respondent, who was again incarcerated. She indicated that she wanted to adopt his child and that she was going to initiate a petition to terminate his parental rights. She filed the termination petition in July 2021, alleging that respondent had an

---

[1] The parental rights of the child's mother were voluntarily terminated and she is not a party to this appeal.

-1-

extensive criminal history, had not contacted the child or provided the child with support in the prior two years, and that he had deserted the child.

In support of her allegations, petitioner presented testimony and documentary evidence indicating that respondent had an extensive criminal history, had been incarcerated multiple times, had provided no support or assistance to the child, and that he did not have any communication or contact with the child. Petitioner testified that the child was thriving in her care and that she desired to adopt the child so that she could provide her with permeance.

In response, respondent acknowledged his criminal history and incarceration. He clarified that since he had been released from prison, he had been complying with the terms of his release, had obtained employment, was paying child support to the child, and was living with his sister. Respondent disputed the allegations that he had no contact with his child and that he had provided her with no support. He testified that the child's mother had allowed him physical contact with the child during periods of time when he was not incarcerated. The child's mother disputed this, but admitted that there was a photograph depicting respondent with the child. Respondent also testified that he had sent JPay messages to the child's mother—which he believed were relayed to the child. The child's mother admitted that she had received the messages, but stated that she ignored them and that she never relayed them to the child. The child's mother added that she had sent photographs of the child to respondent, but that she had done it without the knowledge of the child or petitioner. Next, respondent stated that he had attempted, at times, to provide money for the child, including for medical expenses. He also stated that, through his sister, he tried to provide the child with a $25 gift card. The gift card, he stated, was refused. He believed that the money he sent to the child's mother was given to the child. The child's mother admitted that she had received the money, but stated that she used it to buy gas or cigarettes for herself.

Respondent testified that he had limited direct contact with petitioner. He explained that he had phoned petitioner from the prison, but that she had refused to allow him to talk with the child. Petitioner admitted that respondent had phoned her and that he had sent messages to her via Facebook. She stated that in the phone conversation she told him that it was not appropriate for him to contact the child while he was in prison. She added that she would not allow any contact— including visitation—between respondent and the child while he was incarcerated. Then, after he was released, she continued to prohibit contact because she was waiting for the termination of parental rights to be concluded.

As stated above, the trial court found that petitioner had not established by clear and convincing evidence that there were grounds to terminate respondent's parental rights and that she had not established by a preponderance of the evidence that termination of respondent's parental rights was in the child's best interests. The court, therefore, denied the petition to terminate respondent's parental rights.

## II. STATUTORY GROUNDS

## A. STANDARD OF REVIEW

Petitioner argues that the trial court clearly erred by finding that she had not met her burden of proving by clear and convincing evidence that there were statutory grounds to terminate

respondent's parental rights under MCL 712A.19b(3)(a)(*ii*) and (f). In order to terminate a parent's parental rights, the trial court must find "by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The trial court's factual findings are reviewed by this Court for clear error. See *In re Baham*, 331 Mich App 737, 751; 954 NW2d 529 (2020). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re A Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358503); slip op at 3 (quotation marks and citation omitted).

## B. ANALYSIS

Termination under MCL 712A.19b(3)(a)(*ii*) is appropriate when there is clear and convincing evidence that the child was deserted by his or her parent "for 91 days or more" and the parent "has not sought custody of the child during that period of time." The trial court did not err by finding that petitioner failed to prove that respondent deserted the child. Here, although over 91 days elapsed without respondent having contact with his child or seeking custody, the reason for his lack of contact was because petitioner would not allow him to have contact with his child while he was in prison. Then, once he was released from prison, she would not allow him contact because she did not feel it was in the child's best interests because of the ongoing termination-of-parental-rights proceedings. Respondent opposed the petition to terminate his parental rights. Additionally, he filed a motion for parenting time in the guardianship case. The court in the guardianship matter stated that it would make a determination *after* the termination proceedings were resolved. Thus, the record reflects that respondent was prohibited by the child's legal guardian from having contact with her and, although he did not seek custody, he sought court-ordered parenting time.

Moreover, the record supports the court's determination that there was not a desertion in this case. Respondent testified that when he was approached in prison to take genetic testing, he agreed. After discovering that the child was his, he sent messages to the child's mother at least once a month. On the basis of the messages that were admitted into evidence, he asked for messages to be communicated from him to the child. Respondent also testified that there was a six-month gap between when he was incarcerated for one conviction and when he was incarcerated for a second conviction. During that time, he saw the child 2-3 times per week on a weekly basis. He stated that the child's mother had allowed the contact without the knowledge of petitioner. When he was again incarcerated, he continued to send messages to the child through her mother. Based on this record, it is clear that, although his level of contact and attempted contact was neither frequent nor consistent, he did not desert his child. Accordingly, the trial court did not clearly err by finding that termination was not warranted under MCL 712A.19b(3)(a)(*ii*).

The court also did not err by finding that petitioner failed to prove that termination was appropriate under MCL 712A.19b(3)(f). A court may only terminate a parent's parental rights under MCL 712A.19b(3)(f) if the court finds by clear and convincing evidence:

> (f) The child has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and both of the following have occurred:

(*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.

(*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition.

"Good cause" for the sake of child protective proceedings means "a legally sufficient or substantial reason." *In re Utrera*, 281 Mich App 1, 10-11, 22; 761 NW2d 253 (2008).

Here, petitioner testified that she would not allow contact between respondent and the child while respondent was incarcerated. Just as an incarcerated parent retains the ability to provide proper care and custody for a child, see *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010), an incarcerated parent generally retains the ability to visit, contact, or communicate with his or her child. Respondent's failure to do so regularly and substantially for a period of 2 years or more before the filing of the petition is, as admitted by petitioner in her testimony, because she refused to allow visits or contact while he was incarcerated. Because of the prohibition of the child's guardian, all respondent's contact and communication with his child was done surreptitiously with the aid of the child's mother who apparently did not convey any of his communications. The fact that the child's legal guardian refused to allow contact constitutes good cause for respondent to fail or neglect to have regular and substantial visits, contact, or communications with the child in the two-year-period before the filing of the petition.

Ultimately, this record reflects that respondent's attempts to have contact with the child and to provide her with support were thwarted both by the child's mother and by the child's guardian. Under such circumstances, the trial court did not clearly err by finding that petitioner— the child's guardian—did not establish that termination was warranted under MCRL 712A.19b(30(f). See *In re B and J minors*, 279 Mich App 12, 19; 756 NW2d 234 (2008) (stating that termination is not proper if petitioner deliberately sets out to create the ground for termination). That is, having prohibited contact between respondent and the child for the majority of the two-year period before the filing date of the petition, petitioner may not now rely on that lack of contact to justify the termination of respondent's parental rights.

Because the trial court did not err when it found that no statutory grounds for termination of respondent's parental rights were met by clear and convincing evidence, an analysis of the child's best interests is not necessary. See *In re JK*, 468 Mich 202, 214-215; 661 NW2d 216 (2003).

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron